UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **CHARLES PRESTON**, | ) | Case No. 5:07 CV 0182 |
| | ) | |
| Petitioner, | ) | Judge Sara Lioi |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | OF MAGISTRATE JUDGE |
| **JULIUS WILSON, WARDEN**, | ) | (Regarding ECF #1) |
| | ) | |
| Respondent. | ) | Magistrate Judge James S. Gallas |
| | ) | |

On September 2, 2004, Charles Preston entered guilty pleas to aggravated vehicular homicide and aggravated vehicular assault in the Carroll County Court of Common Pleas and was sentenced to consecutive sentences which aggregated to 15 years. As part of the plea agreement counts two, four, five and six were dismissed, which had charged an additional two counts of aggravated vehicular assault and two counts of vehicular assault. (See Respondent's Ex 5-6, ECF # 7-4). The prosecution had recommended a sentence of 10 years, but the trial court rejected this recommendation. See *State v. Preston,* 2005 WL 1385735, ¶2, 2005-Ohio-2929 (Ohio App. 7 Dist.).

At his plea/sentencing hearing Preston was informed that the penalty range for aggravated vehicular homicide was three to 10 years confinement, and the range for aggravated vehicular assault was two to eight years confinement, and that each count carried with it post-release control periods. He was also informed that sentencing could be either concurrent or consecutive. (Hearing Tr. p. 5-10, ECF # 7-9). After accepting the two negotiated guilty pleas, the state trial court noted: (1) Preston's blood alcohol level of .174 the morning of the collision with the Leggett family vehicle; (2) that Preston had a prior criminal record of nine traffic convictions including four

2

"DUI's," plus 10 license suspensions; (3) that aggravating circumstances at the time of the charges were driving while intoxicated and under licence suspension; (4) that the aggravating circumstance under both counts in the indictment of driving under suspension creates a mandatory sentence; and (5) that the plea negotiation was essentially for consecutive sentences. (Tr. 15-20). The trial court in imposing near the maximum sentence of 18 years (10 years max. for F1 Agg. Veh. homicide and 8 years max. for F2 Agg. Veh. assault), chastised Preston for his past history of repeated operation of a motor vehicle while intoxicated, and knowing that he had lost his driving privileges, but yet deciding to operate a motor vehicle while extremely intoxicated resulting in the death of Earl Leggett (Tr. 21-21).

Preston has exhausted his state remedies and now comes to federal district court under 28 U.S.C.§2254 with the following counseled ground for reduction of his sentence:[1]

> GROUND TWO: PETITIONER'S RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES OF AMERICA, WAS VIOLATED WHEN APPELLATE COUNSEL FAILED TO RAISE THE ISSUE ON APPEAL THAT THE TRIAL JUDGE USURPED THE ROLE OF THE JURY BY MAKING FINDINGS OF FACT IN ORDER TO SENTENCE PETITIONER TO A HIGHER-THAN-MINIMUM PENALTY.

*Procedural history of ineffective assistance of counsel argument:*

---

[1] Exception due to procedural default was taken to Preston's first ground asserting trial court sentencing error in violation of *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). Preston waived his first ground in his traverse. (Traverse p.4, ECF # 13).

3

Preston's appellate brief, filed on January 27, 2005, challenged the 15 year sentence as non-compliant with the requirement under Ohio Rev. Code §2929.14(E) of stated reasons from the trial court for imposing more than minimum concurrent sentences and *State v. Comer*, 99 Ohio St. 3d 463, 793 N.E.2d 473, 2003-Ohio-4165 (2003). (See Respondent's Ex. 9, ECF #7-5).

On April 26, 2005 Preston moved to amend his brief to refer to *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), and February 4, 2005 and March 11, 2005 decisions from Ohio's first appellate district in *State v. Bruce* and its progeny, *State v. Montgomery*. (Respondent's Ex. 11, ECF # 7-7).[2] Preston argued for the minimum sentences pointing out that he had no prior felony convictions and had not served a prior prison term.

---

[2] *State v. Montgomery,* 159 Ohio App.3d 752, 825 N.E.2d 250, 2005-Ohio-1018 (1st Dist.), which held that an Ohio criminal sentence enhanced by additional judicial findings violated *Blakely,* was viewed as an aberration as recently as *Graber v. Bobby,* 2006 WL 314436, 8 ( Feb. 6, 2006, N.D. Ohio). Moreover, there had developed a general consensus that Ohio's sentencing scheme was not impacted by *Blakely, e.g. State v. Huff* 2005 WL 2670037, 3 (Ohio App. 10 Dist.):

> Thus, even if *Blakely* applied to Ohio's sentencing guidelines in general, it would have no application to the findings of fact under R.C. 2929.14(B) because those findings have never been within "the province of the jury." See *also, State v. Johnson*, Washington App. No. 04CA23, 2005-Ohio-3943; *State v. West*, Washington App. No. 04CA37, 2005-Ohio-3485, at ¶ 14; *State v. Wilson*, Washington App. No. 04CA18, 2005-Ohio-830, at ¶ 51; *State v. Semala*, Lake App. No.2003-L-128, 2005-Ohio-2653, at ¶ 32, quoting State v. Morales, Lake App. No.2003-L-025, 2004-Ohio-7239, ¶ 77-83; *State v. Alexander*, Summit App. No. 22295, 2005- Ohio-2393, at ¶ 29; *State v. Farley*, Butler App. No. CA2004-04-085, 2005- Ohio-2367, at ¶ 41, citing *State v. Combs*, Butler App. No. CA2000-03-047, 2005-Ohio-1923, at ¶ 58; *State v. Black*, Allen App. No. 1-04-83, 2005-Ohio-1253, at ¶ 7; *State v. Berry* (2004), 159 Ohio App.3d 476, 486-488, 824 N.E.2d 543, appeal not allowed, (2005), 106 Ohio St.3d 1488, 832 N.E.2d 739; *State v. Trubee*, Marion App. No. 9-30-65, 2005-Ohio-552.

4

Preston sought to shift the focus from the issue of consecutive sentencing under Ohio Rev. Code §2929.14(E)(4) to entitlement to minimum sentence under §2929.14(B), which read:

> (B) Except as provided in division (C), (D)(1), (D)(2), (D)(3), (D)(5), (D)(6), (G), or (L) of this section, in section 2907.02 or 2907.05 of the Revised Code, or in Chapter 2925. of the Revised Code, if the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender, **the court shall impose the shortest prison term authorized for the offense pursuant to division (A) of this section, unless one or more of the following applies:**
>
> (1) The offender was serving a prison term at the time of the offense, **or the offender previously had served a prison term.**
>
> (2) The court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others. (emphasis supplied)

Preston had not served a prison term, but the trial court found that the shortest prison term would demean the seriousness of the offense for purposes of §2929.14(B). See Respondent's Ex. 7, Judgment Entry p.2, ECF # 7-4.

*State v. Bruce* and its progeny, *State v. Montgomery,* took the position that *Apprendi*, *Blakely* and especially *Booker* required reevaluation of the previous series of state cases holding that *Blakely* did not affect Ohio's sentencing scheme. See *State v. Bruce,* 159 Ohio App.3d 562, 566, 824 N.E.2d 609, 612, 2005-Ohio-373 (Ohio App. 1 Dist.); *State v. Montgomery,* 159 Ohio App.3d at 755. [3] Ohio's First Appellate District explained in *Montgomery* that:

_____

[3] The Ohio Supreme Court noted in its highlights from state appellate court decisions that:

The First District applied *Blakely* to maximum sentences in *State v. Bruce*, 159 Ohio App.3d 562,

5

> Under R.C. 2929.14(B), the only prison term a sentencing court can impose on an offender who has not previously served a prison term, without making additional findings, is the minimum prison term allowed by law for the offense. Thus, we hold that the statutory maximum for an offender who has not previously served a prison term is the minimum prison term allowed by law for the offense.

*State v. Montgomery,*  159 Ohio App.3d at 756-757, 825 N.E.2d at 253.

The state appellate court denied leave to amend without explanation (Respondent's Ex. 12, ECF # 7-7), and on June 8, 2005 adjudicated the sole proposition of law as originally set forth. See *State v. Preston,* 2005 WL 1385735, 2005-Ohio-2929 (Ohio App. 7 Dist.). Preston's  challenge to his sentence was overruled.:

> Pursuant to R.C. 2929.14(E)(4), the trial court can order the sentences to run consecutively if the court finds that: (1) the consecutive sentence is necessary to protect the public from future crime or to punish the offender, (2) the sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and (3) at least one of the following apply:
>
> . . .
>
>  "(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
>
>  "(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."

---

2005-Ohio-373, 824 N.E.2d 609, and to sentences exceeding the minimum on a first prison term in *State v. Montgomery*, 159 Ohio App.3d 752, 2005-Ohio-1018, 825 N.E.2d 250.

*State v. Foster ,* 109 Ohio St.3d 1, 18, 845 N.E.2d 470, 488 (2006).

6

The trial court is also obliged to state the reasons for selecting the sentence imposed on the record. R.C. 2929.19(B)(2)(c). As the Ohio Supreme Court recently held, the trial court must give both its findings and reasons at the sentencing hearing. *State v. Comer,* 99 Ohio St.3d 463, 793 N.E.2d 473, 2003-Ohio-4165, at ¶ 20.

*State v. Preston*, 2005 W L 1385735, ¶¶ 7-11.

The state appellate court found that the trial court had sentenced Preston to consecutive sentences under Ohio Rev. Code §2929.14(E) subsections "b" and "c," and elaborated:

The trial court clearly made the necessary R.C. 2929.14(E)(4) findings. It found that there was a "need to punish" Preston by imposing consecutive sentences, that "consecutive sentences would not be disproportionate to the seriousness of your conduct and that the, and to the danger that you pose to the public," and that it needed to impose consecutive sentences "to protect the public from future criminal activity" by Preston.

Furthermore, the trial court adequately explained the reasons for those findings. Contrary to Preston's claims, the trial court did not sentence him to consecutive sentences merely because he killed someone while driving drunk, the definition of aggravated vehicular homicide. Preston has an extensive criminal history indicating that he would continue to drive both drunk and under suspension. Furthermore, the seriousness of his offense is aggravated by both the time of day and the level of alcohol in his blood when he was tested. These factors in combination support the trial court's findings.

*State v. Preston* , 2005 WL 1385735, ¶¶ 17-18.

Preston did **not appeal** this decision or the denial of his motion to amend his appellate brief.

Instead, Preston pursued an application to reopen appeal under Ohio R. App. P. 26(B), which was granted for leave to raise what has become his second ground of ineffective assistance of appellate counsel.[4] See *State v. Preston,* 2005 WL 2746576, 2005-Ohio-5657 (Ohio App. 7 Dist.).

---

[4]    Ohio R. App. P. 26(B)(5) provides: "[a]n application for reopening shall be granted if there is a genuine issue as to whether the applicant was deprived of the effective assistance of counsel on appeal." The Ohio Supreme Court has limited applications to reopen to that precise basis.  See *State v. Reed*, 74 Ohio St.3d 534, 535, 660 N.E.2d 456

7

On October 21, 2005, the state appellate court appropriately determined under the two-prong test

for counsel's effectiveness from *Strickland v. Washington*, 466 U.S.668, 104 S.Ct. 2052, 80 L.Ed.2d

674 (1984), and *Jones v. Barnes*, 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983), which set

the tone of judicial review of appellate counsel's effectiveness, that appellate counsel's strategy

focused on a stronger argument and was not deficient performance:

> In order to establish a claim of ineffective assistance of appellate counsel, the applicant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, certiorari denied (1990), 497 U.S. 1011, 110 S.Ct. 3258, 111 L.Ed.2d 768.

> In *Strickland*, the United States Supreme Court ruled that judicial scrutiny of an attorney's work must be highly deferential. The Court noted that it is all too tempting for a defendant to second-guess his lawyer after conviction and that it would be all too easy for a court, examining an unsuccessful defense in hindsight, to conclude that a particular act or omission was deficient. Therefore, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Strickland*, 104 at 2065.

> Specifically, in regard to claims of ineffective assistance of appellate counsel, the United States Supreme Court has upheld the appellate advocate's prerogative to decide strategy and tactics by selecting what he thinks are the most promising arguments out of all possible contentions. The court noted: "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Jones v. Barnes* (1983), 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987. Indeed, including weaker arguments might lessen the impact of the stronger ones. Accordingly, the Court ruled that judges should not second-guess reasonable professional judgments and impose on appellate counsel the duty to raise every "colorable" issue. Such rules would disserve the goal of vigorous and effective

---

(1996); *State v. Spivey*, 84 Ohio St.3d 24, 25, 701 N.E.2d 696, 1998 - Ohio - 704 (1998); *State v. Bryant-Bey*, 97 Ohio St.3d 87, 776 N.E.2d 480, 2002 - Ohio - 5450 (2002).  An application to reopen does not serve as a proper vehicle to carry any other claim other than ineffective assistance of appellate counsel.

8

advocacy. The Supreme Court of Ohio reaffirmed these principles in *State v. Allen*, 77 Ohio St.3d 172, 1996-Ohio-366, 672 N.E.2d 638.

In a series of cases, this court has already decided that Ohio's felony sentencing scheme does not violate the holding in *Blakely*, most recently in *State v. Hogan* (May 19, 2005), 7th Dist. No. 04 MA 175. In light of our prior decisions concluding that *Blakely* is not applicable to the Ohio felony structure, we cannot say that appellate counsel in the underlying case was ineffective for not raising a fruitless argument.

*State v. Preston* , 2005 WL 2746576, ¶ ¶3-6.

Preston appealed to the Ohio Supreme Court this time and submitted his memorandum in support of jurisdiction on December 5, 2005, arguing that "*Blakely* prevents the imposition of anything but the minimum, concurrent prison term."  (Brief p. 6, Respondent's Ex. 17, ECF# 7-8). Initially, the Ohio Supreme Court accepted this appeal for review. See *State v. Preston*, 108 Ohio St. 3d 1472, 842 N.E. 1052, 2006-Ohio-665 (Table Feb. 22, 2006); Respondent's Ex. 18, ECF # 7-9. However, this was rescinded on May 3, 2006. See *In re Criminal Sentencing Statutes Cases*, 109 Ohio St. 3d 313, 323 ¶187, 847 N.E.2d 1174, 1181 (Table 2006); Respondent's Ex. 19, ECF # 7-9. The appeal was dismissed as "improvidently accepted pursuant to the rule relating to ineffective assistance of counsel announced in *Strickland v. Washington*..." (*Id*.).

*Standard of Review under 28 U.S.C.§2254(d):*

9

The writ of habeas corpus may only be granted to correct constitutional error that has a substantial and injurious effect or influence on the jury's verdict,[5] plea[6] or in this instance, on the sentence.[7] Federal habeas corpus review is conducted under congressionally circumscribed rules set out in §2254(d) which allow the writ to be granted in situations where the state court decision is "contrary to" or "an unreasonable application" of clearly established federal law as set forth by the Supreme Court of the United States or when there is an unreasonable determination of the facts. The state appellate court decision did refer to an appropriate decisional bases (*Strickland v. Washington* and *Jones v. Barnes*) from the Supreme Court which is sufficient to trigger a presumption that "state courts know and follow the law." *Woodford v. Visciotti*, 537 U.S. 19, 24, 123 S.Ct. 357, 360, 154 L.Ed.2d 279 (2002). "§2254(d) requires that 'state court decisions to be given the benefit of the doubt.'" *Holland v. Jackson*, 542 U.S. 649, 654, 124 S.Ct. 2736, 2739, 159 L.Ed.2d 683 (2004), quoting *Visciotti*, 537 U.S. at 24, 123 S.Ct. at 360.

Accordingly, since the state decision acknowledged the correct factors for adjudicating this claim, this matter has progressed past the issue of whether the state court decision was "contrary to" clearly established Federal law and Preston must show an "unreasonable application" of clearly established Federal law. See *Rompilla v. Beard*, 545 U.S. 374, 380, 125 S.Ct. 2456, 2462, 162 L.Ed.2d 360 (2005);*Williams v. Taylor*, 529 U.S. 362, 413, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000);

---

[5] *Brecht v. Abrahamson,* 507 U.S. 619, 622-37, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993); *Fry v. Pliler*, - U.S. -, 127 S.Ct. 2321, 2325, 168 L.Ed.2d 16 (2007).

[6] *Hill v. Lockhart*, 474 U.S. 52, 56-58, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985).

[7] *William v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). *Woodford v. Visciotti,* 537 U.S. 19, 123 S.Ct. 357, 154 L.Ed.2d 279 (2003).

10

*Wiggins v. Smith*, 539 U.S. 510, 520-21, 123 S.Ct. 2527, 2535, 156 L.Ed.2d 471 (2003). The unreasonable application of Supreme Court precedent must, however, be "objectively" unreasonable. *Id.,* 529 U.S. at 409, 120 S.Ct. at 1521; *Wiggins, supra*, at 520-21.  When the state court has rendered a decision applying the correct federal standard, the federal reviewing court  may not grant the writ in its "independent review of the legal question."  *Lockyer v. Andrade*, 538 U.S. 63, 75-76, 123 S.Ct. 1166, 1175, 155 L.Ed.2d 144 (2003). Preston  must show that the state decision applied *Strickland* and *Jones* to the facts of the case in an objectively unreasonable manner.  See *Bell v. Cone*, 535 U.S. 685, 698-99, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); *Williams v. Taylor*, 529 U.S. 362, 409, 410, 120 S.Ct. 1495, 1521-22, 146 L.Ed.2d. 389 (2000). Only when there has been an "unreasonable application" of clearly established federal law is the federal court free to resolve the claim independently. [8]


*Clearly established Federal law:*

The initial direct appeal is a critical stage to which the right to effective counsel on appeal attaches.  *Freels v. Hills*, 843 F.2d 958, 960 (6th Cir. 1988); *Ross v. Moffit*, 417 U.S. 600, 94 S.Ct.

---

[8] "Under AEDPA, a federal court may grant habeas relief, as relevant, only if the state court's "adjudication of [a] claim on the merits ... resulted in a decision that ... involved an unreasonable application" of the relevant law. When a state court's adjudication of a claim is dependent on an antecedent unreasonable application of federal law, the requirement set forth in § 2254(d)(1) is satisfied. A federal court must then resolve the claim without the deference AEDPA otherwise requires. See *Wiggins v. Smith,* 539 U.S. 510, 534, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) (performing the analysis required under *Strickland's* second prong without deferring to the state court's decision because the state court's resolution of *Strickland's* first prong involved an unreasonable application of law); *id*., at 527-529, 123 S.Ct. 2527 (confirming that the state court's ultimate decision to reject the prisoner's ineffective-assistance-of-counsel claim was based on the first prong and not the second). See also *Williams, supra,* at 395-397, 120 S.Ct. 1495; *Early v. Packer,* 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) *(per curiam)* (indicating that § 2254 does not preclude relief if either "the reasoning [or] the result of the state-court decision contradicts [our cases]")."

*Panetti v. Quarterman,* -U.S. -, 127 S.Ct. 2842, 2858 -2859 (2007)

2437, 41 L.Ed.2d 341 (1974). " *McCleskey v. Zant*, 499 U.S. 467, 495, 111 S.Ct. 2454, 1471, 113 L.Ed.2d 517, 545 (1991); *Coleman v. Thompson*, 501 U.S. 722, 56-57, 111 S.Ct. 2546, 115 L.Ed.2d 640, 643 (1991); *Ritchie v. Eberhart*, 11 F.3d 587, 591 (6th Cir. 1993); *cert. denied* 510 U.S. 1135 (1994).   Since *Douglas v. California*, 372 U.S. 353 (1963) there has been recognition of the constitutional requirement for counsel on an initial direct appeal and increasing demand for competence on the criminal appeal.  See *Evitts v. Lucey*, 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985)( holding that effective assistance of appellate counsel following a criminal conviction is a right guaranteed by the due process clause of the Fourteenth Amendment).   Nominal representation on appeal is now clearly impermissible.  *Id.*, at 396.

The standard for appellate counsel's performance is borrowed from *Strickland v. Washington's* two-prong meter of establishing first, objective unreasonableness followed, if necessary by a demonstration of actual prejudice. See *Smith v. Robbins,* 528 U.S. 259, 285, 120 S.Ct. 746, 764, 145 L.Ed.2d 756 (2000), citing *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and *Smith v. Murray*, 477 U.S. 527, 535-536, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986). To be more specific, to sustain a violation of the constitutionally guaranteed Sixth Amendment right to counsel, Preston must first show that counsel's performance was deficient, so that counsel was not functioning as the "'counsel 'guaranteed the defendant by the Sixth Amendment,'" and secondly Preston "must show that the deficient performance prejudiced the defense;" so that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687,

12

104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Williams v. Taylor*, 529 U.S. 362, 390-91, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

While effective assistance of counsel on appeal does not require raising every nonfrivolous argument on appeal, counsel is required to exercise reasonable professional judgment. See *Jones v. Barnes*, 463 U.S. 745, 751-53, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983); *Joshua v. DeWitt*, 341 F.3d 430, 441 (6th Cir. 2003). Clearly established federal law presumes that the result of the proceeding on appeal was reliable and requires a habeas petitioner claiming ineffective assistance of appellate counsel to prove the presumption incorrect. *Smith v. Robbins*, 528 U.S. at 286-87, 120 S.Ct. at 765. "Only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of [appellate] counsel be overcome." *Joshua*, at 441; *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002). However, habeas review must make this ascertainment without hindsight. "Judicial scrutiny of a counsel's performance must be highly deferential" and that "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Bell v. Cone*, 535 U.S. at 698, 122 S.Ct. at 1852, quoting *Strickland v. Washington*, 466 U.S. at 689, 104 S.Ct. at 2065.

*Was the state appellate court decision an "objectively unreasonable" application of clearly established Federal law?*:

On June 24, 2004 the Supreme Court announced its decision In *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), reaffirming its position that "[o]ther than the fact

13

of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Blakely*, 542 U.S. at 301 (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000)).  What changed in *Blakely* from *Apprendi* was the definition of "statutory maximum" sentence from a penalty enhancing the sentence beyond the prescribed statutory maximum to "the maximum [the court] may impose *without* any additional findings." *Blakely v. Washington*, 542 U.S. at 303-304, 124 S.Ct. at 2537   A violation of the Sixth Amendment right to trial by jury results "[w]hen a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts 'which the law makes essential to the punishment,' *Bishop, supra*, §87, at 55, and the judge exceeds the proper authority." *Blakely v. Washington*, 542 U.S. at 303-304, 124 S.Ct. at 2537; and see *Cunningham v. California*, 549 U.S. 270, 127 S.Ct. 856, 860, 166 L.Ed.2d 856 (2007).

It is apparent that Preston is attempting to overturn his state convictions by persuading this federal court that the Ohio Supreme Court's February 27, 2006 decision in *State v. Foster*, 109 Ohio St.3d 1, 845 N.E.2d 470, 2006 - Ohio - 856 (2006), *cert. denied* - U.S. -, 127 S.Ct. 442, 166 L.Ed.2d 314 (2006), should have been applied in Preston's direct appeal.  Preston contends that if he had raised this issue on direct appeal his case would have been one of the hundreds that the Supreme Court of Ohio reversed in *Foster* under *Blakely*.

The Ohio Supreme Court in *Foster*, evaluated the state's sentencing scheme in light of the holdings of the U.S. Supreme Court in *Apprendi*, *Blakely*, and *United States v. Booker*.  The Ohio Supreme Court determined that "Ohio's felony, sentencing plan is a "hybrid" of determinate and

14

indeterminate sentencing, (*Foster*, 109 Ohio St.3d at 12), and, the court severed the determinate aspects of the system. *Id.* at 17.   Following the lead of state supreme court decisions in Indiana and New Jersey, (*Foster*, 109 Ohio St.3d at 27 n.98), the Ohio Supreme Court eviscerated § 2929.14(B)'s presumption in favor of a minimum term and severed § 2929.14(E)'s fact-finding requirements prior to imposing consecutive sentences.  *Id.* at 20.  The Ohio Supreme Court struck down the grounds that permitted judges to impose heightened sentences only after engaging in additional fact-finding found unconstitutional in *Blakely.  Foster,* at 25.

Preston refers the Court to Magistrate Judge Hemann's report and recommendation in *Davis v. Eberlin*  (Case No. 5:06 CV 398), which was adopted in part by this Court on March 3, 2008. That report applied the *"Mapes* factors," a series of eleven non-exclusive questions which has been devised to assist in ascertaining whether appellate counsel's performance was objectively unreasonable. [9]  "In addition to the *Mapes* factors, a habeas court may also consider '[p]revailing norms of practice as reflected in American Bar Association standards and the like.' *Strickland v.*

---

[9] Those questions are as follows:

> (1) Were the omitted issues "significant and obvious"?
> (2) Was there arguably contrary authority on the omitted issues?
> (3) Were the omitted issues clearly stronger than those presented?
> (4) Were the omitted issues objected to at trial?
> (5) Were the trial court's rulings subject to deference on appeal?
> (6) Did appellate counsel testify in a collateral proceeding as to his appeal strategy and, if so, were the justifications reasonable?
> (7) What was appellate counsel's level of experience and expertise?
> (8) Did the petitioner and appellate counsel meet and go over possible issues?
> (9) Is there evidence that counsel reviewed all the facts?
> (10) Were the omitted issues dealt with in other assignments of error?
> (11) Was the decision to omit an issue an unreasonable one which only an incompetent attorney would adopt?

*Whiting v. Burt*, 395 F.3d 607, 616 (6th Cir. 2005); quoting *Mapes v. Coyle*, 171 F.3d 408, 427-28 (6th Cir.1999); *cert. denied*, 528 U.S. 946 (1999).

15

*Washington*, 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).*" Franklin v. Anderson,* 434

F.3d 412, 429 (6th Cir. 2006), *cert. denied*, 127 S.Ct. 941 (2007).  Magistrate Judge Hemann found

in *Davis v. Eberlin* [10] and in *Flannery v. Hudson* [11] that  the nexus between *Blakely* and Ohio's

sentencing scheme was "significant and obvious" during this time frame. Preston also argues that

competent appellate counsel should remain apprised of the law governing the client's case

referencing ABA Standard 4-8.4(2nd Ed. 1986). Given appellate counsel's unsuccessful effort to

amend the brief filed on direct appeal to include a *Blakely* argument there can be no question here

that the omitted issue was significant and obvious.


However, throughout 2005 there was overwhelming state appellate case  authority to the

contrary - a fact recognized by the Ohio Supreme Court in *Foster:*

> Only two other districts have applied *Blakely* to some aspect of Ohio's sentencing law.
> Most Ohio appellate courts have determined that *Blakely* is inapplicable. They have
> distinguished Ohio's plan from Washington's grid system, or emphasized a sentencing
> court's inability to exceed a statutory range through fact-finding, or characterized
> required findings as traditional sentencing factors, or read the "prior conviction"
> exception to *Apprendi* broadly to uphold challenged sentences. These are also the
> arguments of the state against *Foster*, *Quinones*, and *Adams*. Nevertheless and
> unfortunately, *Blakely* is misunderstood if it is seen as inapplicable to Ohio.(footnotes
> omitted).

*State v. Foster,* 109 Ohio St.3d at 17-18, 845 N.E.2d at 487 - 488.

---

[10] 2006 WL 5436234, *9 (N.D. Ohio)

[11] 2008 WL 1787155, *24 (N.D. Ohio)

16

When considering the *Mapes* factors relevant to this matter as contrary authority, strength of omitted issues, and the key factor of whether the decision to omit the issue was evident incompetence, it is clear that competent counsel could reasonably and professionally omit a *Blakely*-based argument to focus the argument on statutory challenges and inconsistency with *State v. Comer*, the governing law at that time. [12] The state appellate court's finding deferring to presumptively sound strategy and tactics was not an "objectively unreasonable"application of clearly established Federal law. See *Preston*, 2005 WL 274576, at ¶5

*No actual prejudice:*

The state appellate court further found no prejudice. See *Preston*, 2005 WL 274576, at ¶6. Even assuming for the sake of argument that appellate counsel's failure to prognosticate was unprofessional and unreasonable rendering his performance constitutionally deficient, there remains the final issue of a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. at 687; *Williams v. Taylor*, 529 U.S. at 390-91. The answer to this final issue was provided in the state appellate court's denial of Preston's Ohio R. App. P. 26(B) application to reopen, when the court found no prejudice due to its ruling in *State v. Hogan* that *Blakely* did not apply to Ohio's sentencing scheme. See *Preston*, 2005 WL 2746576, at ¶ 6. Had counsel been permitted to amend his brief and include

---

[12] Of course *State v. Comer* was subsequently abrogated by *State v. Foster*, and *State v. Mathis,* 109 Ohio St.3d 54, 59-60, 846 N.E.2d 1, 6 (2006).

17

his *Blakely/Booker/Montgomery* argument, the reasoning would have been no different on direct

appeal  when the state appellate court issued its decision in 2005.


Preston also sought to introduce arguments against consecutive sentencing. These arguments

found favor in *Foster*. However, *Blakely* did not address the question of consecutive *versus*

concurrent sentencing.  The Supreme Court bypassed an opportunity to confront  whether *Blakely*

impacts consecutive sentencing after it granted *certiorari* of the decision in *People v. Black*, 35 Cal.

4th 1238, 113 P.3d 534, 29 Cal Rptr. 740 (2005), where the California Supreme Court had stated:

> Permitting a judge to make any factual findings related to the choice between
> concurrent or consecutive sentences does not create an opportunity for
> legislatures to eliminate the right to a jury trial on elements of the offenses.
> Nothing in the high court's decisions in *Apprendi, Blakely,* or *Booker* suggests
> that they apply to factual determinations that do not serve as the "functional
> equivalent" of an element of a crime.

> *Id.*, 35 Cal. 4th at 1263, 113 P.3d at 549.


 In its decision in *Black v. California*, - U.S. -, 127 S.Ct. 1210, 167 L.Ed.2d 36 (2007), the

Supreme Court remanded the case for reconsideration in light of *Cunningham v. California,* 549 U.S.

270, 127 S.Ct. 856, 860, 166 L.Ed.2d 856 (2007). *Cunningham* did not squarely address the debate

over concurrent versus consecutive sentences in light of *Blakely,* but only held that California's

determinate sentencing law exposed defendants to an elevated "upper term" sentence upon facts

judicially ascertained by a preponderance of the evidence in violation of right to trial by jury under

the Sixth and Fourteenth Amendments. *Id.*, 127 S.Ct. at 860. Other state jurisdictions furthermore

have found no federal constitutional link between the right to jury trial and concurrent sentencing.

See *State v. Keene*, 927 A.2d 398 (Me. 2007), *cert. denied*, 128 S.Ct. 490 (2007)*; State v. Tanner*,

210 Or.App. 70, 150 P.3d 31, 37 n. 6 (2006) (noting that several jurisdictions have held that *Apprendi* does not apply to sentencing statutes that require factual findings before a court may impose consecutive sentences). Consequently, there is no clearly established Federal law regarding consecutive sentencing in light of *Blakely* and *Apprendi*. Hence, at the time of Preston's appeal and extending to the present time his contention that *Blakely* imposed upon the states a requirement for the same considerations to apply to concurrent *versus* consecutive sentencing is dubious. Fault cannot be found for counsel's failure to raise a dubious argument.

Next, Preston presumes that if a *Blakely* issue had been raised on direct appeal, this case would have somehow been time extended. The death blow to Preston's sentencing arguments, is that *Foster* held its decision applied only to pending cases on direct review. See *Foster*, 109 Ohio St.3d at 31 ¶106, 845 N.E.2d at 499 ("As the Supreme Court mandated in *Booker*, we must apply this holding to all cases on direct review. *Booker*, 543 U.S. at 268, 125 S.Ct. 738, 160 L.Ed.2d 61, quoting *Griffith v. Kentucky*, 479 U.S. at 328, 107 S.Ct. 708, 93 L.Ed.2d 649 ('A new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases * * * pending on direct review or not yet final.')" Preston cannot escape the fact that direct review concluded in his case 45 days after June 8, 2005, (to allow time for appeal pursuant to Ohio S.Ct Prac.R. II §2(A)(1)) when he failed to appeal to the Ohio Supreme Court. His convictions thus became final well in advance of the February 2006 decision in *Foster*. Moreover, his subsequent application to reopen appeal under Ohio R. App. P. 26(B) was a collateral attack upon his conviction and was not part of the direct appeal. See *Lopez v. Wilson*, 426 F.3d 339, 352 (6th Cir.2005), *cert. denied*, 547 U.S. 1099 (2006); *Scuba v. Brigano* 527 F.3d 479, 485 (6th Cir. 2007). Consequently, he cannot claim prejudice on

19

the assumption that *Foster* would have applied to his appeal if *Blakely* had been raised. His direct

appeal never reached the state supreme court.


Finally, Preston argues that Respondent's argument that there is no prejudice because the

Ohio appellate courts would not have applied *Apprendi/Blakely* correctly to Preston's sentence at the

time of Preston's appeal is precisely the type of blind outcome determination which was forbidden

in *Lockhart v. Fretwell*, 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). *Lockhart* involved a

converse situation where counsel failed to raise law favorable to his client at the time of trial, which

was subsequently overturned. A writ of habeas corpus was granted based on the beneficial effect of

neglected case law at the time of trial. The Supreme Court reversed stating, "Thus, an analysis

focusing solely on mere outcome determination, without attention to whether the result of the

proceeding was fundamentally unfair or unreliable, is defective. To set aside a conviction or sentence

solely because the outcome would have been different but for counsel's error may grant the defendant

a windfall to which the law does not entitle him.(footnote omitted)" *Lockhart*, 506 U.S. at 369-370,

113 S.Ct. at 842 - 843. [13]

---

[13]   As Justice O'Connor reasoned in her concurring opinion:
Specifically, today we hold that the court making the prejudice determination may not consider the
effect of an objection it knows to be wholly meritless under current governing law, even if the
objection might have been considered meritorious at the time of its omission. That narrow holding,
of course, precisely disposes of this case as it appeared before the Eighth Circuit. The omitted
objection of which respondent complained very well may have been sustained had it been raised at
trial. But by the time the Eighth Circuit reviewed respondent's ineffective assistance claim, on-point
Circuit authority bound that court to hold the objection meritless . . .

*Lockhart v. Fretwell*  506 U.S. at 374, 113 S.Ct. at 845.

20

Preston attempts to apply this reasoning for this Court to take a prospective view of the change in law following the time of Preston's appeal. Preston is conflating the objectively deficient performance prong of *Strickland* with its prejudice prong. Nothing in *Lockhart* negates deficient performance when appellate counsel fails to raise case law which is favorable during the time of appeal. See *Hicks v. U.S.*, 122 Fed. Appx. 253, 258-59 (6th Cir. 2005).  *Lockhart*, though, negates a finding on the second prong of prejudice when that once favorable case law is subsequently reversed. *Id.* Preston, in contrast was confronted by case law that was unfavorable to his position at the time of his appeal, but which was subsequently reversed after his appeal had concluded.  Preston must still yet overcome the presumption under the first prong of reasonable performance within the wide range of reasonable professional assistance. *Strickland v. Washington,* 466 U.S. at 689, 104 S.Ct. at 2065. *Lockhart* does not excuse this showing. Preston has not overcome this presumption.

## *CONCLUSION AND RECOMMENDATION*

Following review of the petition and applicable law, Preston has not demonstrated that he is in custody pursuant to a judgment of the state court which resulted in a decision that was contrary to or involved an unreasonable application of Federal law as determined by the Supreme Court of the United States or was the result of a decision based on an unreasonable interpretation of the facts in light of the evidence in the State court proceeding.  See 28 U.S.C. §2254(d)(1) and (2).  There has been no demonstrated need for an evidentiary hearing.  It is recommended that Preston's application for habeas corpus be denied.

s/James S. Gallas
_____

21

United States Magistrate Judge

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of mailing of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).

October 10, 2008